# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

VIRGIL MITCHELL,

    *Plaintiff,*

v.

CORRECTIONAL MEDICAL SERVICE,
A. KHAN,

    *Defendants.*[1]

_____/

CASE NO. 09-CV-11467

DISTRICT JUDGE AVERN COHN
MAGISTRATE JUDGE CHARLES BINDER

## REPORT AND RECOMMENDATION
## ON DEFENDANTS CORRECTIONAL MEDICAL SERVICES'S
## AND DEFENDANT A. KHAN'S MOTION FOR SUMMARY JUDGMENT
(Doc. 102)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED in part and DENIED in part as follows: GRANTED as to Defendant Correctional Medical Services and DENIED as to Defendant A. Khan.**

**II.   REPORT**

    **A.   Introduction**

By order of U.S. District Judge Avern Cohn, this case was referred to the undersigned magistrate judge for general case management on July 1, 2011. (Doc. 79.) The case was originally filed in April 2009 and all defendants have been dismissed except Correctional Medical Services

---

[1] Defendants Armstrong, Warren, Wenzel, Riley, Jones, and Hynes were terminated on February 24, 2010, by Order adopting a Report and Recommendation filed by Magistrate Judge Morgan. In addition, Plaintiff's claims alleged under the Americans with Disabilities Act, the Rehab Act and conspiracy under § 1985 and 1986 were also dismissed. (Docs. 44, 48.)

("CMS") and Dr. A. Kahn ("Kahn"). Plaintiff Virgil Mitchell, an inmate in the custody of the Michigan Department of Corrections ("MDOC"), is currently incarcerated at Carson City Correctional Facility in Carson City, Michigan. The events forming the basis of Plaintiff's complaint occurred while Plaintiff was housed at Thumb Correctional Facility in Lapeer, Michigan. Plaintiff's *pro se* complaint, brought under 42 U.S.C. § 1983, alleges that Plaintiff's Eighth Amendment right to not have his serious medical needs met with deliberate indifference was violated in August 2006 when Dr. Khan ordered that his wheelchair accommodation be discontinued. (Doc. 1 at 20.)

Before the Court is Defendants CMS and Khan's motion for summary judgment. (Doc. 102.) Plaintiff filed a response to the motion. (Doc. 106.) Defendants filed a reply (Doc. 107) and Plaintiff filed a sur-reply. (Doc. 108.) I conclude that, pursuant to E.D. Mich. LR 7.1(f)(1), the motions are ready for report and recommendation without oral argument.

**B.     Background**

Plaintiff asserts that he was initially injured in October 2004 when a correctional officer closed a cell door on him, resulting in lumbar sacral injuries, including bulging discs. (Compl., Doc. 1 at 18 ¶ 16.) In 2005, Plaintiff was transferred to Thumb Correctional Facility ("TCF") and placed under the care of Dr. Khan. Upon arrival, Plaintiff was seen by nursing staff and was "given the use of a wheelchair due to obvious ambulatory limitations." (Doc. 1 at 19, ¶ 18.) Plaintiff filed a request for additional special accommodations, including a wheelchair attendant, bottom bunk, air mattress, and wheelchair gloves, on January 2, 2006. (Doc. 1 at 19, ¶ 19.) Plaintiff's request was granted in part by Dr. Khan and others on February 3, 2006, granting him

2

his continued request for a wheelchair and the additional requests of a wheelchair attendant and bottom bunk. (Doc. 1 at 19, ¶ 20.)

In May 2006, Plaintiff "re-enter[ed] his 02/03/2006 need for use of a wheelchair, because of his on-going numbness in his legs, arm and back pain, to health care Dr. Khan and request was granted." (Doc. 1 at 20, ¶ 22.)  Then on August 25, 2006, "Dr. Khan ordered that Plaintiff's Wheelchair be discontinued and it was taken with no evaluation by Dr. Khan nor any recommendation from a Neurologist." (Doc. 1 at 20, ¶ 24.)

Without use of a wheelchair, Plaintiff avers that he attempted to walk to the medication line, call-outs, and the "chow hall" but such attempts were "not only painful but time consuming" causing him "missed meals and med-line until next day or serving time." (Doc. 1 at 20, ¶ 25.) Although Plaintiff received a two- day "lay-in for meals" that was also discontinued, leaving him "with the same dilemma" of "getting to his destinations on time." (Doc. 1 at 20, ¶ 26.) From August 26, 2006, through September 8, 2006,  Plaintiff made "numerous medical request[s] to Health service stating, that he needed the uses of Wheelchair reinstated, because back pain was impeding his ability to walk up-right and he was experiencing numbness in the legs to the point they were giving out."  (Doc. 1 at 20, ¶ 27.)

On September 10, 2006, Plaintiff was "injured in a fall down the unit stairs when [his] legs just (give out) from up-under him causing him to loose balance and fall to the bottom of the five steps in the unit." (Doc. 1 at 21, ¶ 28.) Plaintiff was "knocked unconscious when hitting his head at the bottom of the stairs" for "five minutes or so and was in and out of consciousness for approximately 45 minutes or so" according to "eye witness, unit officer, along with on-duty R.N." (Doc. 1 at 21, ¶ 29.) Plaintiff experienced some soreness, exacerbation of pain, blurred vision,

3

headaches and incontinence as a result of the fall. (Doc. 1 at 21, ¶ 31.) On September 11, 2006, Plaintiff filed grievance # TCF 060900600121 "against Dr. Khan, alleging that Dr. Khan's deliberate indifference was a direct wanton endangerment to Plaintiff's life, when Dr. Khan order Plaintiff's Wheelchair be confiscated and then turn a deaf-ear to Plaintiff's numerous pleas for the return of a Wheelchair..." (Doc. 1 at 21, ¶ 32.)

Plaintiff's remaining claim against these two remaining Defendants is that "either through their acts of omission or acts of commission and within the cloak of their authority showed deliberate indifference to Plaintiff's serious medical needs" and "'[k]new or should have known' about the malicious and gross negligence of their subordinate staff which resulted on Mr. Mitchell Injuries." (Doc. 1 at 22, ¶ 34.) Plaintiff further alleges that these actions violated the Eighth Amendment right to be free from cruel and unusual punishment under 42 U.S.C. § 1983 and the equivalent right under the Michigan Constitution. (Doc. 1 at 24-25.) Plaintiff seeks compensatory and punitive damages in the amounts of $150,000 and $100,000, respectively. (Doc. 1 at 25-26.)

### C.     Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

4

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**D.    Analysis & Conclusions**

**1.    Defendant CMS**

Defendant CMS argues that it is entitled to summary judgment because Plaintiff has failed to properly exhaust his administrative remedies since CMS was not named in any grievance filed by Plaintiff. (Doc. 102 at 10-12.)  Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility

5

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD")

03.02.130 (eff. Dec. 19, 2003).[2] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(R). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(X). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(T).

The prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(Y). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must request a Step II appeal form within five days, and has an additional five days to submit it. MDOC PD 03.02.130(DD). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(HH). The Step III response concludes the administrative grievance process.

Plaintiff's complaint acknowledges that his grievance filed on September 11, 2006, (TCF 060900600121) was filed "against Dr. Khan..." (Doc. 1 at 21, ¶ 32.) As noted by Defendant,

---

[2]The policy directive was superceded on March 5, 2007, but since the conduct at issue here occurred before that date, the 2003 version applies.

Plaintiff erroneously relies on language from *Jones v. Bock*. (Doc. 107 at 2.) The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the December 2003 version – clearly requires this higher level of specificity. Since Plaintiff failed to meet the required level of specificity with respect to CMS, I suggest that Defendant CMS's motion for summary judgment should be granted.

Alternatively, Defendant CMS contends that it is entitled to summary judgment where Plaintiff has failed to allege personal actions taken by CMS or that CMS had a policy or procedure which was violative of constitutional rights and where Defendant CMS, through an affidavit of Joy Lloyd, has stated that it had no such policy. (Doc. 102 at 12-13, Ex. J.) To state a civil rights claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). *See also Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009) (a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"). To state a claim against a supervisory official, the plaintiff must allege that the supervisory official personally participated in the constitutional deprivation or that the supervisory official was aware of widespread abuses and, with deliberate indifference to the inmate's constitutional rights, failed to take action to

8

prevent further misconduct. *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658, 691-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   In this case, I suggest that Defendant correctly notes that Plaintiff has not alleged that CMS took any action. Plaintiff's blanket assertions regarding medical care and mere mention of CMS fails to state a claim because "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). I therefore suggest that CMS is entitled to summary judgment on this ground as well.

### 2. Defendant Khan

The Supreme Court held in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), that the deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain in violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment to the Constitution. The Court explained that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

A violation of the Eighth Amendment can be "manifested by prison doctors and their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104. The inquiry is two-pronged, consisting of both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991). The objective inquiry asks whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298.

Defendant Khan's motion contends that since Plaintiff received some medical treatment, Plaintiff's allegations state a mere disagreement with Dr. Khan's medical opinion and selected course of treatment which is insufficient to state a constitutional claim. (Doc. 102 at 13-14.) Defendant relies on *Callahan v. Poppell*, 471 F.3d 1155 (10th Cir. 2006) wherein, as Defendant describes, the plaintiff's request for a wheelchair was denied because the staff felt its use would lead to a weakening of the plaintiff's muscles. (Doc. 102 at 14.) However, in Defendant Khan's motion, he fails to state the reason why the wheelchair Defendant previously authorized for Plaintiff's use, was taken away. Defendant does not contend that Plaintiff's muscles were weakening due to use of the wheelchair or any other reason at all for the decision to take away the wheelchair accommodation that he himself had granted in the past. In other words, Defendant has not asserted *any* medical reason, medical condition or rationale that caused him to conclude that his previously granted medical accommodation of a wheelchair should be discontinued. I therefore suggest that Defendant Khan, as the moving party, has failed to meet his burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street*, 886 F.2d at 1479; *Boles v. Lewis*, No. 1:07-CV-277, 2008 WL 4534043, at *2 (W.D. Mich. Sept. 30, 2008)(finding the defendant failed to meet his initial summary judgment burden where defendant doctor terminated physician-ordered treatment, i.e., a low-sodium diet, without any basis for knowing the severity of the impact of his decision); *see also Neal v. Anspaugh-Kisner*, No. 07-10671, 2008 WL 506336, at *8-9 (E.D. Mich. Feb. 22, 2008)(finding the defendant failed to meet his initial burden as the moving party where the defendant failed to discuss the plaintiff's "specific claim" against him in his motion and brief).

10

Instead, Defendant Khan apparently relies on the notion that Plaintiff cannot state a claim under the Eighth Amendment where he avers a decision not to grant or to discontinue the grant of a wheelchair accommodation since such a claim would merely state, at most, a medical malpractice claim. (Doc. 104 at 13-15.) This appears to be more of a facial attack to Plaintiff's complaint and I suggest that such an attack is flawed. Plaintiff's allegations are that he required a wheelchair, that Defendant agreed and gave him a wheelchair, that Defendant then took the wheelchair away without any stated medical reason, and that as a result he was forced to attempt to walk in pain, missed meals and call-outs, and eventually fell down the stairs. I suggest that these allegations are sufficient to satisfy both the subjective and objective components of a viable Eighth Amendment claim. *Wood v. Plummer*, No. 3:11cv00032, 2011 WL 2971874, at *5 (S.D. Ohio June 27, 2011)(finding allegations that the plaintiff was denied pain medication and the use of a wheelchair even after he told staff he could not walk because of hip and back pain facially satisfied objective and subjective components of an Eighth Amendment claim).

I therefore suggest that Defendant Khan's motion for summary judgment be denied.

**E.     Conclusion**

I suggest that Defendant CMS's motion for summary judgment be granted based on Plaintiff's failure to properly exhaust and that Defendant Khan's motion should be denied because Defendant Khan failed to meet his initial burden of showing the absence of a genuine issue of material fact as to an essential element of Plaintiff's case. *Street*, 886 F.2d at 1479.

11

**III.    REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                                  s/ Charles E Binder
                                                  CHARLES E. BINDER
Dated: May 23, 2012                                 United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Julia Bell and Richard Joslin, Jr., and served by first class mail on Virgil Mitchell, #349178, Carson City Correctional Facility, P.O. Box 5000, Carson City, MI, 48811-5000.

Date: May 23, 2012                              By     s/*Jean L. Broucek*
                                                        Case Manager to Magistrate Judge Binder